FUENTES, P.J.A.D.
*392 Twenty-seven-year-old David Eric Yearby, an alleged mentally ill man, died strapped to a "restraint chair" in the Middlesex County Adult Correctional Facility, approximately twenty-four hours after he was arrested for assault and resisting arrest by the local police department. The legal representative of his estate filed a multi-count civil suit against a number of public entities and their employees, including three nurses employed by the Middlesex County Adult Correctional Facility.
After joinder of issue, the nurses moved to dismiss with prejudice the counts in plaintiffs' complaint alleging professional and/or medical malpractice based on plaintiffs' failure to file a timely Affidavit of Merit (AOM) as required by the Affidavit of Merit statute, N.J.S.A. 2A:53A-26 to -29. The trial court granted the nurses' unopposed motion.
Nearly two months later, plaintiffs, represented by substitute counsel, moved to restore the counts dismissed by the court based on the doctrine of substantial compliance and due to "extraordinary circumstances." Plaintiffs' substitute counsel argued that former counsel's failure to take any action to comply with the *393 requirements of the Affidavit of Merit statute, including failing to oppose defendants' *385 motion to dismiss, constituted "extraordinary circumstances" warranting a dispensation from the draconian sanction of dismissal with prejudice.
The trial court granted plaintiffs' motion and restored the counts in plaintiffs' complaint alleging professional malpractice against the nurses. The court found plaintiffs provided sufficient evidence to justify the application of the equitable doctrine of substantial compliance to relax the time restrictions of the Affidavit of Merit statute. The court also found that plaintiffs' original counsel's failure to comply with the requirements of the Affidavit of Merit statute, including his failure to oppose the nurses' motion to dismiss with prejudice the counts in the complaint alleging professional malpractice, constituted "extraordinary circumstances," providing plaintiffs with an additional, independent basis for relief under the court's equitable powers.
By leave granted, the nurses now appeal arguing the trial court erred in finding plaintiffs established grounds to warrant relief from the time restrictions established by the Legislature in N.J.S.A. 2A:53A-27. We agree and reverse.[1] The record shows plaintiffs' original counsel failed to take any measures to comply with the clear, time-sensitive requirements of the Affidavit of Merit statute. In fact, from his earliest interactions with the judicial system, counsel behaved as if the civil complaint he prepared and filed did not raise any claims based on the tort of professional malpractice. The doctrine of substantial compliance is not applicable when the record shows a complete failure to take any measures to comply.
*394 Likewise, the equitable concept of "extraordinary circumstances" has never been used to relieve an attorney from the legal and ethical consequences of failing to competently perform his or her professional responsibilities. As the Supreme Court reaffirmed in its most recent, comprehensive review of the subject, an " 'attorney inadvertence' will not, standing alone, support a finding of extraordinary circumstances[.]" A.T., 231 N.J. at 349, 175 A.3d 932.
We are keenly aware of the seriousness of the allegations raised in this civil action. The circumstances that plaintiffs allege caused this young man's death are unimaginably horrific. Those who are found civilly liable should be held accountable. However, as established by the Legislature and recognized by the Supreme Court, "an affidavit of merit strikes at the heart of the cause of action[.]" Paragon Contrs., Inc. v. Peachtree Condo. Ass'n, 202 N.J. 415, 422, 997 A.2d 982 (2010). Thus, neglecting to provide an affidavit of merit after the expiration of the 120-day time period in N.J.S.A. 2A:53A-27"generally requires dismissal with prejudice[.]" Ibid. Here, there is no evidential basis to support the trial court's decision to apply equitable principles to relax this statutory time restriction.
We recite only the facts necessary to decide the discrete issue raised in this appeal.
I
On the evening of October 31, 2014, David Eric Yearby was arrested by the Piscataway Police Department for assault and resisting arrest. He was thereafter *386 transported to the Middlesex County Adult Correctional Facility (MCACF) where he was involved in some kind of altercation. Once in the cell, Yearby attempted to clog the toilet, requiring his removal from the cell to permit maintenance staff to enter and unclog the toilet. According to MCACF records, Yearby refused to leave the cell. An "extraction team" consisting of specially trained Corrections Officers physically removed Yearby from the cell; he was handcuffed, *395 restrained with a "spit mask," and placed in a "watch cell." The Corrections Officers involved alleged that Yearby "was throwing feces and urine from his cell toilet, while yelling 'I'll kill all y'all when I get out of here.' "
We describe what allegedly occurred next by quoting directly from the trial judge's letter-opinion dated September 16, 2016:
After the extraction, Mr. Yearby was placed in an inmate restraint chair at approximately 7:25 PM and was placed in the care of the facilit[y's] nursing staff. Defendant [Angela] Ward, the nurse on duty[,] stated that they checked on Mr. Yearby in 15-minute intervals. Watch records indicate that [d]efendant Ward conducted her last check on Mr. Yearby at approximately 3:15 AM on November 2, 2014, however the [c]ourt notes that the times recorded appear to have been written over and the original time listed on that entry appears to be 2:55 AM ... At 3:23 AM a "Code Blue" alert was called because Mr. Yearby appeared unresponsive and EMTs were called.... The Middlesex County Medical Examiner later determined the cause of death to be "blunt force trauma of head and neck with cervical fracture and spinal cord injury" but was unable to identify the manner of death.
On September 29, 2015, the Estate of David Eric Yearby and Veronica Yearby individually and as Administratrix of the Estate filed a complaint and demanded trial by jury against nineteen individually named defendants, including Registered Nurses Gideon Thuo and Angela Ward and Licensed Practical Nurse Nicole Tuesday. All three of these defendants were employees of the MCACF. Plaintiffs' complaint contained a total of thirteen numbered counts and named all nineteen defendants as civilly liable. Counts I to IV alleged violations of the New Jersey Civil Rights Act, N.J.S.A. 10:6-1 to -2, predicated on defendants' "special relationship" to and interactions with decedent as an inmate. Counts V alleged negligence under the Tort Claims Act (TCA), N.J.S.A. 59:1-1 to 12-3. Count VI alleged negligent failure to train; Count VII alleged a gross neglect and a deviation of the standard of care owed to decedent as a "mentally disabled" individual; and Count VIII alleged negligent supervision and negligent hiring.
Plaintiffs do not make any specific allegations against defendants Thuo and Ward until Count IX. Plaintiffs allege that Thuo "represented to [decedent], [d]efendant Middlesex County, and the *396 general public that he devoted his full time and professional attention to the use and employment of those skills, and, applied the skills, judgment and expertise to the medical needs of the general public and of the [decedent] in particular."[2] Plaintiffs further allege that nurse Thuo provided "improper nursing care" that resulted in "damages suffered" by decedent.
With respect to defendant-nurse Ward, plaintiffs allege she performed "improper nursing care" that caused decedent to suffer *387 damages. Plaintiffs also claim that defendant Ward was negligent, careless, and was not "adequately trained in nursing care, and care for an inmate in an inmate restraint chair." Defendant Ward also "[f]ail[ed] to conform with recognized standards of care, exercised by nurses in the same specialty and the same area[.]" Plaintiffs allege that these collective acts and omissions by defendant Ward "constitute negligence and/or carelessness and/or recklessness[,]" as may become apparent through "discovery."[3]
The allegations against defendant Nicole Tuesday, a licensed practical nurse (LPN) are reflected in Count XI of plaintiffs' complaint. Plaintiffs allege that defendant Tuesday provided decedent with "improper nursing care" resulting in damages. Counts XII alleges "willful disregard" against all of the nineteen named defendants; Count XIII is based on the Wrongful Death Act, N.J.S.A. 2A:31-1 to -6, and again names all defendants. In the Civil Case Information Statement (CIS) filed contemporaneously with the complaint, plaintiffs' counsel checked "No" in response to the question: "Is this a professional malpractice case?"
On January 20, 2016, defendants Thuo, Ward, and Tuesday filed an answer to plaintiffs' complaint denying any civil liability for the injuries suffered by decedent while in the custody of the MCACF and asserted twenty-five affirmative defenses. Of particular relevance *397 to the issue raised in this appeal, affirmative defense fifteen asserts: "that [p]laintiff has failed to file an appropriate Affidavit of Merit for claims of professional negligence against [d]efendants Angela Ward, RN (Registered Nurse), Nicole Tuesday, LPN (Licensed Practical Nurse), and Gideon Thuo, RN (Registered Nurse), licensed persons pursuant to New Jersey Statutes, N.J.S.A. 2A:53A-26, et seq. and applicable case law." In the CIS, defendants responded "Yes" to the question: "Is this a professional malpractice case?"
II
Pursuant to N.J.S.A. 2A:53A-27, "within 60 days following the date of filing of the answer to the complaint by the defendant," plaintiffs were required to provide each defendant "with an affidavit of an appropriate licensed person that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional or occupational standards or treatment practices." Here, to meet this first statutory deadline, plaintiffs were required to file and serve defendants with an appropriate AOM from a registered nurse by March 21, 2016.
N.J.S.A. 2A:53A-27 authorizes the trial court to grant "no more than one additional period, not to exceed 60 days, to file the affidavit pursuant to this section, upon a finding of good cause." Thus, had plaintiffs sought such an extension of time and assuming the trial court would have found "good cause" for granting it, plaintiffs were required to file and serve defendants with an appropriate AOM by no later than May 19, 2016. Here, it is undisputed that plaintiffs' counsel did not make any effort to comply with the mandate of the Affidavit of Merit statute within the timeframe established by the Legislature in N.J.S.A. 2A:53A-27. It is also undisputed that the trial court did not make any *398 effort to *388 conduct a Ferreira [4] conference prior to the expiration of the initial sixty-day statutory period, nor at any time thereafter.
In a letter dated June 6, 2016, plaintiff Veronica Yearby informed her original counsel, who represented her individually and in her capacity as Executrix of the Estate of David Yearby, that she had retained substitute counsel to represent plaintiffs "in connection with a lawsuit" filed against all of the named defendants in this case. On June 13, 2016, original counsel signed a Substitution of Attorney withdrawing as plaintiffs' counsel of record in this case. Substitute counsel signed the same document confirming her appearance as superseding attorney. However, substitute counsel's signature is not dated. By letter dated June 17, 2016, substitute counsel filed the Substitution of Attorney with the Clerk of the Middlesex County Superior Court.
On June 20, 2016, defendants Thuo, Ward, and Tuesday filed a motion to dismiss with prejudice the counts in plaintiffs' complaint alleging professional malpractice for failure to comply with the requirements of the Affidavit of Merit statute. In an order dated July 8, 2016, the trial court granted defendants' unopposed motion to dismiss with prejudice "with respect to any and all claims of professional negligence/medical malpractice[.]" In a transmittal letter dated July 11, 2016, defendants' counsel served plaintiffs' counsel with a copy of the trial court's order.
By letter dated July 11, 2016, substitute counsel apprised the Middlesex County Civil Assignment Office that she "had recently been retained" to represent plaintiffs in this case. She also enclosed a copy of the fully executed substitution of counsel document and noted that her office had "recently received the file from the previous attorney." She requested that the court conduct "a case management conference in this matter so we can prepare the *399 case properly." In a form response entitled "Response to Case Management Request" dated July 14, 2016, the Court Services Officer placed an "X" next to the fifth "DENIED" category that stated: "There is a pending motion to dismiss for failure to provide discovery[.]" No other comments or explanations were included.
In an email dated July 12, 2016, defendants' counsel forwarded to substitute counsel discovery material previously provided to plaintiffs' original counsel. Defense counsel asked substitute counsel to consider this gesture as "the good faith attempt of these defendants to obtain compliance and avoid further motion practice." On July 25, 2016, thirteen days after this email, defendant-nurses moved to dismiss without prejudice the remaining counts of plaintiffs' complaint as a discovery sanction under Rule 4:23-5(a)(1), for plaintiffs' failure to provide discovery requested on December 5, 2015.
The next significant procedural event occurred on August 18, 2016. On this date, a law firm entered its appearance as additional counsel of record for plaintiffs in this case.[5] Plaintiffs' new counsel advised defendants' counsel that "[m]oving forward, kindly copy [new counsel] on all correspondence in this matter." On August 31, 2016, *389 plaintiffs filed a motion pursuant to Rule 4:50-1(f) to reinstate the counts in the complaint alleging professional malpractice that were dismissed with prejudice on July 8, 2016.
An attorney with the law firm that made up plaintiffs' new legal team submitted a certification in support of the motion to restore plaintiffs' complaint that contains sixty-seven numbered paragraphs. In a section denoted "PLEADINGS," this attorney acknowledged that defendants Ward, Tuesday, and Thuo filed an answer to plaintiffs' complaint on January 20, 2016.
In the section labeled "[ORIGINAL COUNSEL'S] GROSS NEGLIGENCE/BLATANT MISCONDUCT," substitute counsel *400 describes what, in his judgment, are multiple examples of professional negligence committed by plaintiffs' original counsel in the prosecution of this civil action. With respect to defendant-nurses, substitute counsel acknowledges that on June 20, 2016, original counsel received the notice of motion to dismiss with prejudice the counts alleging professional negligence based on plaintiffs' failure to comply with the Affidavit of Merit statute. New counsel claims that on June 21, 2016, plaintiffs' new legal team conducted a conference call with original counsel "to discuss all aspects of the within matter." According to substitute counsel: "During that conference call, [original counsel] did not advise [substitute counsels] of [d]efendants Ward, Tuesday, and Thuo's Motion to Dismiss [p]laintiffs' professional negligence/medical malpractice claims with prejudice." Substitute counsel alleges that on July 11, 2016, original counsel emailed the new legal team a copy of the court's July 8, 2016 order.
In the section of the certification labeled "ATTEMPTS TO RESOLVE [PLAINTIFFS' ORIGINAL COUNSEL'S] GROSS NEGLIGENCE/MISCONDUCT," the new counsel describes how they conducted "a joint, in-depth review of the file to assess original counsel's shortcomings in representing [p]laintiffs in the within matter." From this point forward, substitute counsel devotes the bulk of the certification to describing how original counsel failed to contact the physician who performed decedent's autopsy and failed to review the evidence in the possession of the Medical Examiner.
In this section of his certification, substitute counsel mentions defendant-nurses only once. In paragraph sixty-five, substitute counsel states: "On or about August 31, 2016, [p]laintiffs obtained an Affidavit of Merit from Jennifer Graney, RN, BSN, LNCC. (A copy of the Affidavit of Merit is attached[.] )." Graney's AOM dated August 31, 2016 states:
1. I am a Registered Nurse, licensed and practicing nursing in the State of Pennsylvania and New Jersey. I am also certified as a Legal Nurse Consultant. I have participated in assessment, planning and hands on care of individuals in an acute care setting in various capacities of Nursing since 1994.
*401 2. I have reviewed the attached medical records of David Eric Yearby.
3. Based upon my review of the attached medical records, it is my opinion that there exists a reasonable probability that the care, skill and/or knowledge exercised or exhibited in the treatment, practice and/or work of Angela Ward, RN, Nicole Tuesday[,] LPN, and Gideon Thuo, RN in the care of David Eric Yearby, fell outside acceptable professional standards or treatment practices.
4. All of my statements in this Affidavit of Merit are offered to a reasonable degree of professional nursing certainty.
5. The opinions stated herein are based on my review of the attached medical *390 records and policy standards received to date. I reserve the right to supplement and/or revise my opinions regarding jail-specific policies and standard of care deviations and/or general standard of care deviations based on any additional information which becomes available.
6. I have no financial interest in the outcome of this case.
Defendant-nurses received this AOM 227 days after they filed their responsive pleading in this case and 107 days after the maximum period to file an AOM established by the Legislature in N.J.S.A. 2A:53A-27.
III
The trial court heard oral argument from counsel on plaintiffs' Rule 4:50-1(f) motion[6] to reinstate the part of the complaint predicated on allegations of professional and medical malpractice against defendant-nurses on September 16, 2016. The motion judge issued a letter-opinion explaining his reasons for granting plaintiffs' motion on October 24, 2016. As framed by the judge, the issue was whether plaintiffs were entitled to equitable relief from the 120-day time restriction in N.J.S.A. 2A:53A-27. The judge *402 correctly noted that he had the authority to grant equitable relief from the strict enforcement of the Affidavit of Merit statute in cases where there are "extraordinary circumstances" or a showing of "substantial compliance" with the statutory mandate.
We will first review the trial court's analysis based on the doctrine of substantial compliance. Citing Palanque v. Lambert-Woolley, 168 N.J. 398, 774 A.2d 501 (2001), and an unpublished opinion from this court, the motion judge concluded that plaintiffs had "substantially complied with the [A]ffidavit of [M]erit statute and [have] met the five criteria provided in [ Palanque at 406, 774 A.2d 501 ]." We disagree.
As a starting point, we remind our trial court colleagues that unpublished opinions from this court do not constitute precedent and are therefore not binding upon any court. R. 1:36-3. Substantively, the record we have described at length here does not support the application of the substantial compliance doctrine.
As the Supreme Court held in Palanque:
The doctrine of substantial compliance is used by courts to "avoid technical defeats of valid claims," ... and requires: "(1) the lack of prejudice to the defending party; (2) a series of steps taken to comply with the statute involved; (3) a general compliance with the purpose of the statute; (4) a reasonable notice of petitioner's claim, and (5) a reasonable explanation why there was not a strict compliance with the statute."
[ Palanque, 168 N.J. at 405, 774 A.2d 501 (internal citations omitted).]
With respect to factor (1), we agree that the record does not show defendant-nurses *391 were prejudiced by plaintiffs' failure to provide an AOM within the 120-day statutory timeframe. However, with respect to factor (2), the record shows that plaintiffs' counsel did not take any steps to comply with the clear mandate of N.J.S.A. 2A:53A-27 during the 120-day maximum statutory timeframe. Counsel did not request the trial court to conduct a Ferreira conference or inform defendants' counsel or the trial court that he was having difficulty securing the AOM. Plaintiffs' counsel did not even respond to defendants' motion to dismiss the Counts in the complaint based on professional negligence and/or medical malpractice. *403 Factor (3) requires the delinquent party to produce evidence showing "a general compliance with the purpose of the statute[.]" Ibid. In Ferreira, the Supreme Court emphasized that the Affidavit of Merit statute has a "dual purpose ... 'to weed out frivolous lawsuits early in the litigation while, at the same time, ensuring that plaintiffs with meritorious claims will have their day in court.' " Ferreira, 178 N.J. at 150, 836 A.2d 779 (quoting Hubbard v. Reed, 168 N.J. 387, 395, 774 A.2d 495 (2001) ). We accept, arguendo, that the untimely AOM produced by plaintiffs' new counsel satisfies the salutary purpose of weeding out frivolous lawsuits. However, an AOM served on defendants 107 days after the expiration of the maximum statutory time period does not satisfy the "early in the litigation" part of the Court's analytical paradigm.
The best evidence of plaintiffs' original counsel's failure to take any steps to comply with the requirements of the Affidavit of Merit statute is found in a letter-brief plaintiffs' substitute counsel submitted to the trial court in opposition to defendants' motion for reconsideration:[7]
In this case, the lack of communication from [p]laintiffs['] former counsel to present counsel constituted more than mere lack of due diligence. Former counsel failed to apprise current counsel or [p]laintiff of the fact that a motion to dismiss for failure to provide an Affidavit of Merit was pending. Former counsel, likewise, failed to provide present counsel any discovery until after [d]efendants['] Motion to Dismiss was granted by the [c]ourt on July 8, 2016. Former counsel also never made any attempt to speak with a nursing expert or procure an Affidavit of Merit in this matter.
Factor (4) requires plaintiffs to show they gave defendants reasonable notice of the claims against them within the maximum 120-day statutory period. Here, except for the generic, non-descriptive allegations reflected in the complaint, plaintiffs' original counsel did not identify the standard of care applicable to nurses working in a penal institution nor describe what actions *404 defendants took or failed to take that deviated from the relevant standard care.
The fifth and final factor of the substantial compliance doctrine requires plaintiffs to provide "a reasonable explanation why there was not a strict compliance with the statute." Palanque, 168 N.J. at 405, 774 A.2d 501. The motion judge found: "Plaintiffs['] prior counsel[ ] provides a reasonable explanation why there was not a strict compliance with the statute. Accordingly, the [c]ourt does find substantial compliance with the [A]ffidavit of [M]erit statute." This conclusion is not supported by the record. Plaintiffs' original counsel did not provide any explanation for his failure to comply with the Affidavit of Merit *392 statute or for his failure to respond to defendants' motion to dismiss the counts in the complaint alleging professional malpractice. The record developed before the trial court does not support granting plaintiffs any relief based on the equitable doctrine of substantial compliance.
The concept of "extraordinary circumstances" is the second equitable exception the Supreme Court has applied to "temper the draconian results of an inflexible application of the [Affidavit of Merit] statute[.]" Ferreira, 178 N.J. at 151, 836 A.2d 779. Here, the motion judge found plaintiffs were entitled to relief from the time restrictions of N.J.S.A. 2A:53A-27 based on "extraordinary circumstance[s]." Without legal analysis or factual elaboration, the judge held: "Whatever the nature of the breakdown between [p]laintiffs['] current and former counsel, it went beyond the 'inadvertence' or oversight found to be insufficient in [ Paragon Contrs., Inc., 202 N.J. at 419, 997 A.2d 982 ]." As we will explain, the record does not support a finding of "extraordinary circumstances."
As we begin our analysis of this equitable doctrine, we are compelled to note that Ferreira was a legal malpractice case in which the defendant was sued by his former client for mishandling a medical malpractice cause of action. The defendant-attorney successfully moved to dismiss with prejudice the legal malpractice complaint against him based on the plaintiff's failure to serve him *405 with an AOM within the 120-day restriction in N.J.S.A. 2A:53A-27. Ferreira, 178 N.J. at 148, 836 A.2d 779. In Ferreira, the plaintiff was thirty-two days over the 120-day statutory deadline at the time the trial court granted the defendants' motion and dismissed the complaint with prejudice. This court affirmed the trial court. Ibid.
The Court granted the plaintiff's petition for certification and reversed. Id. at 149, 836 A.2d 779. Writing for the majority of the Court,[8] Justice Albin found the plaintiff was entitled to relief under the equitable remedy of substantial compliance based on the following facts:
[P]laintiff's counsel was in possession of the affidavit of merit within ten days of the filing of the answer. Moreover, plaintiff's counsel had complied with the underlying legislative purpose by having an expert verify the meritorious nature of the malpractice claims at an early stage of the case. Defendants do not contend that they suffered prejudice by the eighteen-day late service of the affidavit. There was no delay in the proceedings or unnecessary expense incurred by defendants as a result of the affidavit's tardy arrival. Defendants did not request the affidavit at any point between the filing of the answer and the end of the 120-day statutory period. Significantly, it was not until after the receipt of the affidavit that defendants filed the motion to dismiss.
[ Id. at 152, 836 A.2d 779 ]
Justice Albin nevertheless noted that the plaintiff fell "short of the mark" of complete compliance with the doctrine of substantial compliance because the "plaintiff's counsel did not, within the statutory time frame, take steps to forward the affidavit to opposing counsel." Id. at 152-53, 836 A.2d 779. With respect to "extraordinary circumstances," Justice Albin emphatically proclaimed "counsel's carelessness in misfiling defendant's answer and failing to calendar this matter does not constitute an extraordinary circumstance."
*393 Id. at 153, 836 A.2d 779. However, while not criticizing the defendant for seeking relief under N.J.S.A. 2A:53A-27, the Court also found that
*406 principles of equity and the essential goal of the statute-to eliminate frivolous lawsuits-are not advanced by dismissing the complaint. Plaintiff's malpractice action was verified by an expert as meritorious within 120 days of the filing of defendants' answer and served on defendants only eighteen days later. Defendants waited until after they received the affidavit to file the dismissal motion. Under those circumstances, we conclude that defendants should be estopped from claiming entitlement to dismissal as a remedy.
[ Ibid. (emphasis added).]
In an effort to fulfill the statute's intent "to flush out insubstantial and meritless claims that have created a burden on innocent litigants and detracted from the many legitimate claims that require the resources of our civil justice system ... [and discourage] gamesmanship or a slavish adherence to form over substance[,]" the Court ultimately established what is now commonly referred to as a Ferreira conference. Id. at 154, 836 A.2d 779. The Ferreira Court envisioned this case management conference would be conducted as authorized by Rule 4:5B-1:
To ensure that discovery related issues, such as compliance with the Affidavit of Merit statute, do not become sideshows to the primary purpose of the civil justice system-to shepherd legitimate claims expeditiously to trial-we propose that an accelerated case management conference be held within ninety days of the service of an answer in all malpractice actions.
[ Ibid. (emphasis added).]
We have emphasized the reference to "malpractice actions" in Ferreira to highlight that plaintiffs' original counsel filed a CIS in this case that responded "No" to the question: "Is this a professional malpractice case?" Thus, commencing with his first interaction with the Civil Division's case management system, plaintiffs' original counsel failed to recognize this cause of action as a professional malpractice case. Under these circumstances, it is reasonable to infer that this material misrepresentation of the legal nature of this cause of action, at this early phase of the process, caused the judiciary's case management system to misdirect the course of the litigation and contributed to the trial court's failure to schedule the required Ferreira conference.
Independent of this systemic problem, the record is uncontroverted that plaintiffs' original counsel did not take any steps to comply with the requirements of the Affidavit of Merit statute *407 during the time he was plaintiffs' attorney of record. It is also equally undisputed that plaintiffs' substitute counsel waited nearly two months to take any action to address this problem.
In Alan J. Cornblatt, PA v. Barow, 153 N.J. 218, 242, 708 A.2d 401 (1998), a unanimous Supreme Court held "that a dismissal for failure to comply with the statute should be with prejudice in all but extraordinary circumstances." In Ferreira, Justice Albin began the majority opinion of the Court with the following admonition:
The statute does not impose overly burdensome obligations. The plaintiff must keep an eye on the calendar and obtain and serve the expert's report within the statutory timeframe. This seemingly simple scheme has generated a tide of litigation and a new area of jurisprudence as this Court and our appellate courts have grappled with the derelictions of plaintiffs' counsel, who have filed well-grounded complaints, but have neglected to file technically correct or *394 timely affidavits. The failure to deliver a proper affidavit within the statutory time period requires a dismissal of the complaint with prejudice.
[ Ferreira, 178 N.J. at 146, 836 A.2d 779.]
Justice Albin ended with similar words of caution:
Diligence and attentiveness in the practice of law will spare plaintiffs' attorneys from later seeking an equitable remedy that may not be available. Those members of the plaintiffs' bar who follow the simple dictates of the statute will find no impediment to championing the causes of their clients.
[ Id. at 155, 836 A.2d 779.]
The record here shows an undisputed pattern of inattentiveness coupled with outright ignorance of the legal requirements of the Affidavit of Merit statute by plaintiffs' original counsel. Under these uncontested facts, there is no basis to invoke the equitable concept of "extraordinary circumstances" to permit plaintiffs to prosecute a professional and/or medical malpractice action against these three nurses. Although courts "are loath to visit the sins of the lawyer upon the innocent client[,]" SWH Funding Corp. v. Walden Printing Co., 399 N.J. Super. 1, 14, 942 A.2d 839 (App. Div. 2008), we are not at liberty to disregard clearly defined statutory requirements absent evidence supporting grounds for equitable relief. Ferreira, 178 N.J. at 146, 836 A.2d 779.
Reversed and remanded. We do not retain jurisdiction.

This issue comes before this court with disturbing regularity and has been impervious to every attempt tried by our Supreme Court to avoid its recurrence. However, we are hopeful that the measures adopted by the Court in A.T. v. Cohen, 231 N.J. 337, 175 A.3d 932 (2017) will significantly reduce the number of cases in which this issue is the predominant problem.

Plaintiffs made the same allegations about defendants Ward and Tuesday.

The page containing Count X of plaintiffs' complaint is not included in the appellate record.

In Ferreira v. Rancocas Orthopedic Assocs., 178 N.J. 144, 154-55, 836 A.2d 779 (2003), the Supreme Court directed trial court judges to conduct an accelerated case management conference in malpractice actions to address discovery issues, and in particular, AOM requirements.

Substitute counsel signed the Notice of Appearance on July 22, 2016, nearly a month before his August 18, 2016 letter to defendants' counsel. The Notice of Appearance was stamped "filed" by the trial court on July 29, 2016.

We note that Rule 4:50-1 authorizes the trial court to "relieve a party or the party's legal representative from a final judgment or order [.]" (emphasis added). The court's July 8, 2016 order dismissed with prejudice only the counts in plaintiffs' complaint alleging professional and/or medical malpractice. The order was thus "an interlocutory order [which] may always be reconsidered, on good cause shown and in the interests of justice, prior to entry of final judgment." Akhtar v. JDN Properties at Florham Park, 439 N.J. Super. 391, 399, 109 A.3d 228 (App. Div.), certif. denied, 221 N.J. 566, 115 A.3d 833 (2015) (citing Johnson v. Cyklop Strapping Corp., 220 N.J. Super. 250, 263-64, 531 A.2d 1078 (1987) ). See also R. 4:49-2. We make this clarification pursuant to our didactic role as an intermediate appellate court. This error is legally inconsequential with respect to the issue addressed here.

Defendant-nurses moved for reconsideration of the trial court's decision pursuant to Rule 4:49-2. The trial judge denied the motion.

Justice Long joined by then Justice Zazzali dissented. Ferreira, 178 N.J. at 156, 836 A.2d 779. Justice Zazzali was appointed Chief Justice by Governor Corzine in 2006 and served in this capacity until he retired in 2007.